## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## NEW ALBANY DIVISION

| | | |
|---|---|---|
| CLARK FLOYD LANDFILL, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| COUNTY OF CLARK, INDIANA; | ) | |
| BOARD OF COMMISSIONERS OF CLARK | ) | Case No. 4:18-cv-00004 |
| COUNTY, INDIANA, in their official | ) | |
| capacities; COUNTY OF FLOYD, INDIANA; | ) | |
| BOARD OF COMMISSIONERS OF FLOYD | ) | |
| COUNTY, INDIANA, in their official | ) | |
| capacities, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT FOR
## <u>DECLARATORY JUDGMENT AND BREACH OF CONTRACT</u>

Plaintiff Clark Floyd Landfill, LLC ("CFL"), for its complaint against Defendants Clark County and Floyd County ("the Counties"), the Board of Commissioners of Clark County, Indiana and the Board of Commissioners of Floyd County, Indiana ("the Commissioners") (collectively "Defendants"), states as follows:

### <u>INTRODUCTION</u>

1.      This is an action for declaratory relief, breach of contract, and damages concerning a Franchise and License Agreement[1] (the "Contract") entered into

---

[1] The Franchise and License Agreement includes and incorporates the following three amendments: Supplemental Agreement No. 1, dated December 12, 2006; Supplemental Agreement No. 2, dated July 21, 2011; and Supplemental Agreement No. 3, dated January 1, 2013.

between CFL and the Counties to establish, maintain and operate a landfill (the "Landfill") in Clark County, Indiana.

2.     Pursuant to Rule 57 of the Federal Rules of Civil Procedure and the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, CFL seeks a judgment declaring that under the Contract: (1) CFL is not obligated to pay for all capital improvement projects to the Landfill; (2) the purpose of the Landfill Improvement Fund ("LIF") is to pay only for capital improvement projects specifically listed by the Contract, which were required for a horizontal (but not vertical) expansion of the Landfill; (3) the Counties are obligated to pay CFL for work completed on capital construction projects that were approved by Clark County's engineer and were within the budget; (4) capital improvement projects relating to a vertical (but not horizontal) expansion of the Landfill are funded by revenue from bonds issued by Clark County and serviced by CFL through the Bond Payment Fund ("BPF") and as such should not be included in the LIF; (5) Clark County should release bond money necessary to fund required projects; (6) Clark County should pay for services CFL has provided but was not required to provide under the Contract, and (7) Clark County is obligated to pay for any shortfalls caused by its agents' failure to properly estimate vertical expansion costs.

3.     CFL also seeks damages caused by Clark County's and/or Floyd County's breach of the Contract.

## THE PARTIES

4.     Plaintiff CFL is a Limited Liability Company organized under the laws of the State of Kentucky, with its principal place of business in Jeffersonville, Indiana.  CFL's members include four individuals, Robert Lee, Matt Lee and Tim Myers, each of whom is a Kentucky citizen, Jerry Perchick who is a Georgia resident, and the Lee Family Enterprise Trust, the trustee of which is Gail Lee, a citizen of Kentucky.

5.     Defendant Clark County is a political subdivision of the State of Indiana.  The Board of Commissioners of Clark County is the committee of elected officials who entered into the Contract with CFL in their official capacity and on behalf of Clark County. The Commissioners of Clark County are currently making the decision not to perform Clark County's obligations under the Contract.

6.     Defendant Floyd County is a political subdivision of the State of Indiana.  The Board of Commissioners of Floyd County is the committee of elected officials who entered into the Contract with CFL in their official capacity and on behalf of Floyd County. The Commissioners of Floyd County are currently making the decision not to perform Floyd County's obligations under the Contract.

## JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction based upon the Court's diversity jurisdiction under 28 U.S.C. § 1332 because there is complete diversity and the amount in controversy exceeds $75,000.

8.     Venue is proper, pursuant to U.S.C. § 1391(b) & (c) (1) and 1391(b)(2), because this Court sits in the district and division that includes Clark County, Indiana. CFL's principal place of business and Clark County's principal office is in Jeffersonville, Clark County, Indiana. The Contract was negotiated and entered into in Clark County, Indiana, and the Landfill is located in Clark County, Indiana.

## BACKGROUND HISTORY OF THE LANDFILL

9.     The Landfill has been in operation since approximately 1971 and located near Borden, Indiana in Northern Clark County.

10.     The Counties have owned the Landfill since it opened.

11.     For many years, the Defendants have designated the Landfill as the final destination for most of the solid waste from the Counties, as well as a significant portion of the surrounding area.

12.     Clark County and Floyd County have benefited from the Landfill not only because it has been a source of revenue, but also because the Landfill has been an important means for the Counties to meet the disposal requirements for their Solid Waste Management Districts.

13.     The Landfill had operated for at least 20 years before the enactment of Subtitle D of the Resource Conservation and Recovery Act ("RCRA") became effective, and before the Indiana Department of Environmental Management ("IDEM") had promulgated the regulations required to implement RCRA in 1997.

14. Landfills were not required to be lined until the RCRA requirements became effective, and thus a large portion, or approximately 80% of the historical disposal area, of the Landfill is unlined.

15. Much of the Landfill had been developed well before the New Source Performance Standards ("NSPS") under the Clean Air Act were published in 1998, requiring the installation of a landfill gas collection and control system.

16. In 2003, due to the sharp increase in operational costs related to environmental requirements, and drastic reduction in the volume of wastes being received at the Landfill, the Counties sought a new operator for the Landfill.

17. The operator prior to 2003 was paid per ton of waste disposed, with Clark County incurring all compliance and capital improvement/landfill development costs.

18. The Counties sought a more sophisticated operator who could share in a portion of the operational costs of the Landfill and increase disposal volumes to the Landfill.

19. Increasing disposal volumes was important because to cover the costs of environmental compliance the operator would have to ensure that the Landfill received enough waste (and thus revenues) to make it financially viable.

20. CFL, with its relationship to waste management companies in the region, had the ability to ensure that the Landfill would receive enough waste to make it financially viable for continued Landfill operations for the benefit of both the Defendants and CFL.

## THE CONTRACT

### A.    The Original Agreement – January 1, 2004

21.    Clark County, Clark County's engineers (Jacobi, Toombs & Lanz, or "JTL") and CFL negotiated the original Agreement dated December 8, 2003 and effective January 1, 2004. (Attached as "Exhibit 1").

22.    The parties recognized that all should be bound by any environmental permits, specifying that "all permits held by the Clark-Floyd Landfill Corporation shall be transferred and held jointly in the names of Clark County, Floyd County and the Company.  Furthermore, any additional permits or future permits shall all be held jointly in the names of Clark County, Floyd County and the Company, or as otherwise mutually agreed upon by the parties."  (Ex. 1, Article 6, ¶5, at p 8).

23.    JTL prepared all permit applications for the Landfill and either did not include all parties, or the permitting authorities would not allow multiple parties to jointly hold the permits.

24.    Prior to the Contract, CFL had no involvement in the operation or planning for the Landfill.

25.    During the entirety of the period of CFL's involvement with the landfill, Clark County has taken the lead in Landfill planning, development and oversight.

26.    Pursuant to Article 5, ¶ 7 of the agreement, the Counties promised to "continue to have available at locations adjacent to the Landfill, soils for daily and

operator-installed final cover such that no significant changes in the previous excavation and hauling methods are required." (Ex. 1 at pp. 7–8).

27.     As more fully set forth below, the Counties have not adequately planned for soil needs for future landfill projects.

**B.     Supplemental Agreement No. 1 – December 12, 2006**

28.     The Landfill is permitted to accept and dispose of waste only within the horizontal and vertical limits specified in the solid waste permit for the Landfill. In 2006, out of necessity for the continued lifespan of the Landfill, Clark County and its engineers began planning for a horizontal expansion of the Landfill.

29.     In order to pay for the horizontal expansion, the Defendants and CFL negotiated and executed Supplemental Agreement No. 1 to the Contract (the "First Supplement"), attached hereto as "Exhibit 2."

30.     The First Supplement created the Landfill Improvement Fund ("LIF") and stated that "[CFL] shall pay the [Counties] an annual amount (the "Landfill Improvement Fund Payment"), in the amounts set forth on Exhibit D as adjusted in accordance with the terms of this Agreement." (Exhibit 2, p. 3, ¶C).

31.     Exhibit D lists specific projects that were required immediately to properly operate the Landfill as well as projects associated with the horizontal expansion.

32.     The First Supplement describes the costs in Exhibit D in terms of the horizontal expansion project, divided into three components: "Estimated Land Acquisition Expense," "Required Capital Improvement Project Over Years with

their Estimated Project Costs (Est.)," and "Annual Eng., Misc. Contour Update" costs. (Exhibit 2, p. 3, ¶C1).

33.    The First Supplement recognized that the estimated costs for the continued horizontal expansion of the Landfill were estimates through the year 2068, and that the actual costs may be more or less than those estimates.

34.    The First Supplement, and the majority of the capital improvements listed in Exhibit D, was predicated upon acquiring additional land (i.e. the "Estimated Land Acquisition Expense") and horizontally expanding the municipal solid waste footprint of the Landfill.[2]

35.    In 2008 Clark County, its engineers and CFL began acquiring the land required for horizontal expansion.

36.    Due to dwindling capacity within the existing horizontal and vertical boundaries of the Landfill (also known as "airspace"), the Counties determined that they needed to immediately acquire the Nunn Property for immediate additional horizontal expansion,[3] but the Counties did not have the capital to do so.

37.    CFL agreed to pay the costs, including debt service, for the immediate acquisition of the Nunn Property for the benefit of the Counties, and Clark County

---

[2] The "Required Capital Improvement Project Over Years" column on Exhibit D to the First Supplement includes numerous items such as constructing expansion cells, which based on their descriptions, are related to and necessitated by a horizontal expansion. (Exhibit 2, at Ex. D).

[3] Acquisition of the Nunn Property was necessary to provide soils for landfill construction and keep the Landfill open for the construction of Cell 7.1, referenced to begin in 2010 in Exhibit D to the First Supplement. This Property would only allow a short term expansion, but was considered the only option at the time.

proceeded to close its purchase. Costs for this acquisition were $1,240,273.39. As of the date of the filing of this Complaint, CFL has paid $777,000 toward that amount.

38.    The Nunn Property is currently owned by the Board of Commissioners of Clark County.

39.    Clark County and JTL determined that the only possible place to expand the Landfill for additional capacity in addition to the Nunn property was to the North, which was property owned by the State of Indiana.

40.    In 2010, Clark County concluded its negotiations with the State of Indiana and acquired land to the North of the Landfill for the expansion through a land swap.

41.    At this point in 2010, the Landfill was running out of airspace and there was an immediate need to begin planning for the horizontal expansion to prevent the Landfill from immediately closing.

42.    If the Landfill closed it would create a hardship on the Defendants since they would have nowhere to dispose of waste. Furthermore, closure would trigger required closure/post-closure work at significant cost, and the Counties' closure/post-closure fund was and is drastically underfunded.

**C.    Supplemental Agreement No. 2 – July 21, 2011**

43.    After the land swap with the State of Indiana was completed, and during preparation of the horizontal modification application, it was discovered that

the land swap property slated for the expansion had significant wetlands that could not be removed without mitigation.[4]

44.     Neither Clark County nor its engineers, JTL, completed proper due diligence to discover the extent of the wetlands and/or the timeline and cost of wetlands mitigation prior to agreeing to the land swap.

45.     The requirement to deal with the wetlands extended the timeframe for horizontal expansion beyond the remaining airspace, or useful life, of the Landfill, thereby threatening a shutdown of the Landfill and making a horizontal expansion impossible in the time remaining before a shutdown.

46.     During this same time period, and as CFL was reviewing the draft major modification application for the horizontal expansion prepared by Clark County's consultant, JTL, another consultant that CFL hired to check the County's work discovered that the actual direction of groundwater flow beneath the Landfill was different than what was being reported to IDEM by Clark County's contractor. JTL showed the groundwater flow migrating from northwest to southeast. This incorrect flow direction actually "masked" groundwater impacts, which was actually away from the landfill in all directions as documented in hydrogeological study conducted by other County contractors prior to 2004.

---

[4] The Contract contains the prohibition that "The Company [CFL] shall not disturb any designated wetlands at the landfill." (Exhibit 1, p. 6, ¶13).

47.   With updated statistical analyses of groundwater data, CFL's consultant determined, and IDEM agreed, that the unlined portions of the Landfill had been impacting groundwater for years, predating CFL's operations.[5]

48.   Due to the significant complications detailed above which prevented a timely horizontal expansion as contemplated by the First Supplement, the horizontal expansion plans were put on hold in favor of a newly envisioned "vertical expansion"[6] which would include installation of a sub-surface barrier wall and perimeter leachate collection system which was required to reduce groundwater impacts.

49.   In order to detail how the vertical expansion project was to be funded, the Counties and CFL negotiated and agreed to Supplemental Agreement No. 2 (the "Second Supplement"), attached hereto as "Exhibit 3."

50.   The Second Supplement refers to the Landfill's capacity expansion as the "Project," and expressly provides for the requisite funding through the issuance of revenue bonds:

> WHEREAS, in furtherance of the construction of the Project, [the Counties] and [CFL] have identified the need to further amend the Franchise Agreement as required to approve and authorize the

---

[5] As discussed above, CFL did not begin operating the Landfill until 2004, after implementation of Subtitle D.   Nearly all disposal in the unlined areas predated CFL's operations by decades.

[6] Horizontal and vertical expansions are materially different.   Unlike a horizontal expansion – where the Landfill could be expanded gradually by adding additional cells and funding that work as it occurs– a vertical expansion (*i.e.* allowing for more waste to be placed on top of the existing Landfill footprint) requires significant upfront capital investments to the engineering and construction of the landfill.

financing of such improvements through the issuance of bonds by Clark County on the terms and conditions set forth herein.

(Exhibit 3, p. 1, last ¶).

51.    The Second Supplement established a new funding mechanism for the vertical expansion project—the "Bond Payment Fund"—which is the mechanism by which Landfill revenues would be used to make payment obligations of the bonds or all other debt service obligations. (Exhibit 3, p. 3, ¶3).

52.    The Second Supplement does not mention or discuss the LIF, nor does the Second Supplement specify how cost overruns for the Project should be covered.

53.    Clark County began issuing bonds in order to obtain immediate funding to pay for the vertical expansion.

54.    Clark County agreed to provide a property tax guarantee (*i.e.*, to cover any shortfall through property tax revenues) in the event that Landfill revenues are insufficient to make any required bond payments, without the necessity of a similar pledge by Floyd County. (*Id.*)

55.    CFL is required to make payments to Clark County to cover the bond payments.  (Exhibit 3, pp. 3-4, ¶3). CFL has made all required payments to Clark County to allow it to make the bond payments.

56.    Additionally, the Second Supplement allowed CFL the opportunity to complete a portion of the capital construction projects, as long as the costs are approved by Clark County's engineer and are within Clark County's budgeted costs for each project. (Exhibit 3, p. 6, ¶7).

57.    The Second Supplement specifically states that such work will be paid for at the prevailing cost of such work within the Louisville metro area. (Exhibit 3, p. 7).

**D.    Supplemental Agreement No. 3 – January 1, 2013**

58.    After entry of the Second Supplement, JTL submitted an application to the Indiana Department of Environmental Management ("IDEM") for a major modification to the Landfill to permit the vertical expansion.

59.    The Vertical Expansion Major Modification Permit submitted by JTL incorporated a proposed subsurface barrier wall and perimeter leachate collection system around the facility (together, the "Barrier Wall Work").

60.    The Barrier Wall Work required impacts to wetlands and stormwater diversion, which required extensive and expensive earth movement and mitigation.

61.    The Barrier Wall Work also required the collection of leachate from the unfilled areas of the landfill that pre-dated CFL's operations, significantly increasing the leachate management requirements beyond that contemplated by the Contract.

62.    The vertical expansion required extending the existing gas collection system in ways for which it was not initially designed, placing additional stresses on the system that were not anticipated or accounted for by Clark County or JTL when planning for the vertical expansion.

63.    The additional stress on the gas collection system which was not anticipated by JTL caused increased operational costs beyond those reasonably

expected for a horizontally expanded Landfill or included in the Landfill's operating budget.

64.    IDEM approved the Vertical Expansion Major Modification and Clark County issued bonds in the amount of approximately $9 million to complete a portion of the work.

65.    Even though it was clear that the entire Barrier Wall Work could not be completed for this amount, Clark County only issued bonds totaling approximately $9 million.

66.    In 2013, with only the eastern half ("Phase I") of the Barrier Wall Work system completed, Clark County issued another series of bonds totaling approximately $9. million to fund the remainder of the Project (the west phase, or "Phase II"), which was the reason for Supplemental Agreement No. 3 (the "Third Supplement"), attached hereto as "Exhibit 4."

67.    The Third Supplement, like the Second Supplement, makes no mention or reference to the LIF or LIF payments, and reiterates that the Project—including Phase II—was funded by bonding, the debt service of which was to be made from Landfill revenues via the Bond Payment Fund to the extent available, with a Clark County property tax guarantee. (Exhibit 4, p. 2 & pp. 4–5, ¶ 4).

68.     CFL completed some of the Phase I site preparation work under the supervision of JTL, and was paid by Clark County for this work in preparation for the installation of the Barrier Wall Work.[7]

69.     As of 2017, CFL has performed additional Phase II project work for site preparation including but not limited to work required for wetlands mitigation and west phase Barrier Wall Work, but has not been paid for that work.

70.     To date, CFL has made all required payments to Clark County to allow the County to make the bond payments as required under the contract.

71.     Despite the new funding mechanism, Clark County has intermittently continued to send an LIF schedule to CFL.  The schedule has included requests for such work as environmental reporting or wetlands consulting, but has never included direct costs for the vertical expansion and Barrier Wall Work.

72.     In February of 2015, the Indiana State Board of Accounts audited Clark County's financial records related to the Contract and criticized Clark County for failing to contemporaneously maintain the LIF Schedules. To answer the Auditor's concern, Clark County had its agent, JTL, create 3 years of LIF schedules, back-dated for the period from 2011 through 2013.

---

[7] The Third Supplement states: "the Company [CFL] has advanced the sum of One Million Four Hundred Sixty-eight Thousand Three Hundred Forth-six and 33/100 Dollars ($1,468,346.33) (the "Advance Amount") in order to complete Phase I of the Project, notwithstanding that the Company was under no legal obligation to make the advancement."  (Exhibit 4, p. 7, ¶6). The Counties agreed to pay the Advance Amount in full from the proceeds of any bonds issued to finance Phase II of the Project. (*Id.* at pp. 7–8). The County did repay this amount.  No interest was charged or payed for CFL's advance.

73.     These back-dated LIF schedules notably did not include or reference any project work related to the Barrier Wall Work or vertical expansion.

74.     In April of 2017, rather than sending an updated LIF Schedule which was the parties' custom, Clark County sent a letter demanding that CFL update the LIF to include nearly $10 million in cost overruns for the vertical expansion, Barrier Wall Work, and Phase II projects associated therewith.

75.     Prior to 2016, CFL made all LIF payments as requested.

76.     In the fall of 2016, Clark County informed CFL that it expected CFL to take over all environmental compliance and reporting previously performed by JTL and paid for as part of the LIF payments CFL had been making.  Beginning in January of 2017, CFL reduced its LIF payments to account for the fact that it was now doing work that had traditionally been paid for by Clark County.

77.     Clark County has completely stopped any further engineering design, planning and bidding work on the Barrier Wall Work and related projects, and has refused to release any remaining bond money to complete the necessary work.

78.     Clark County has also failed to have its engineer plan for gas collection system upgrades to accommodate the vertical expansion, which has led to an enforcement action by IDEM.

79.     Clark County has failed to have its engineer plan for the necessary and permitted increased leachate collection and storage, or for the continued operation of the Landfill.

80.     Despite the fact that the Supplement #3 expressly provides that Phase II project work needed to be completed "in order to achieve regulatory compliance and protect the public health, safety and welfare of the residents of Clark County and Floyd County that are benefitted by the existence and operation of the Landfill" and that such project work was to be financed "through the issuance of bonds by Clark County and/or Floyd County" (Ex. 4, pp. 1–2), the Counties have not released payments from the bond account to fund the Phase II project work.

81.     The failure by the Counties to fund Phase II work and to continue work on the Barrier Wall Work and other improvements prevents CFL from maintaining compliance with requirements imposed by IDEM.

82.     The failure to continue the Barrier Wall Work exacerbates the potential for migration of groundwater contamination (contamination that predates CFL's operations).

83.     The failure to continue work on the Barrier Wall Work and other improvements hinders CFL's ability to operate the Landfill in compliance with legal requirements and makes it more likely that IDEM may not renew the Landfill operating permit.

84.     The failure of the Counties to continue capital improvement work and the County engineer's design failures and planning failures are obstructing the ability of CFL to properly operate the JTL-designed landfill gas collection system, and have caused CFL to incur considerable financial costs to maintain compliance.

85.    The failure by the Counties to adequately plan for long term operation of the Landfill and necessary improvements jeopardizes the future of the Landfill.

86.    Since the Counties own the Landfill, they are the only parties who can complete the planning and bidding for further Barrier Wall Work and related project work.

**COUNT I**
**DECLARATORY JUDGMENT**
**(AGAINST ALL DEFENDANTS)**

87.    CFL realleges and incorporates by reference the averments of in paragraphs 1 through 86 above.

88.    Pursuant to Rule 57 of the Federal Rules of Civil Procedure and the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, CFL seeks a judgment declaring that:

(a) CFL is not obligated to pay for all capital improvement projects to the Landfill;

(b) the purpose of the Landfill Improvement Fund ("LIF") was only to pay for specific listed projects related to horizontal expansion on Schedule D of the First Supplement and is not to pay for vertical expansion projects or Barrier Wall Work;

(c) the Counties are obligated to pay CFL for work completed on capital construction projects that were approved by Clark County's engineer and contemplated by the Third Supplement;

(d) Projects relating to the vertical expansion of the Landfill are to be funded solely by revenue from bonds issued by Clark County;

(e) the Counties are obligated to make payments for the Phase II Barrier Wall Work from bond revenue;

(f) the Counties' shifting of environmental reporting obligations to CFL during the past year (2017), despite the fact that the Counties have traditionally paid for such work, entitles CFL to compensation for the costs of this additional work; and

(g) Defendants must provide an accounting of the LIF and the bond revenues.

89.   An actual controversy exists as to the scope of CFL's rights and the Counties' obligations under the Contract.

90.   This declaratory judgment action is necessary and useful in determining the rights and responsibilities of the parties.

## COUNT II
## BREACH OF CONTRACT
## (AGAINST THE COUNTIES)

91.   CFL realleges and incorporates by reference the averments of paragraphs 1 through 90 above

92.   The Counties are required by the Contract to adequately plan for long term operation of the Landfill and improvements necessary to maintain regulatory compliance and continued operation of the Landfill.

93.     The Contract obligates the Counties to use revenues from the bonds issued, and serviced through the Bond Payment Fund, to pay for the capital improvement projects related to the vertical expansion and Barrier Wall Work.

94.     The Counties have breached the Contract by failing to perform said obligations.

95.     The Counties' breach has caused, and will continue to cause, CFL to suffer damages, and prevents CFL from operating the Landfill in compliance with its permits and applicable environmental regulations.

96.     In addition, the Counties breach threatens the public health, safety and welfare of the residents of Clark County and Floyd County that are benefitted by the existence and operation of the Landfill.

97.     CFL is entitled to damages equal to the costs that have been, and will continue to be, incurred as a result of the Counties' breach, consequential damages arising from said breach, and pre-judgment interest on all such costs or expenses. These damages exceed $75,000.

98.     In addition, the Court should enter an injunction requiring the Counties to fund the Phase II project work as required by the Third Supplement.

## COUNT III
## QUANTUM MERUIT/UNJUST ENRICHMENT
## (AGAINST THE COUNTIES AND THE BOARD OF COMMISSIONERS
## OF CLARK COUNTY )

99.     CFL realleges and incorporates by reference the averments of paragraphs 1 through 98 above.

100.    The Counties expressly or impliedly requested that CFL perform certain services beyond CFL's obligations under the Contract.

101.    Such services included, but are not limited to:

(a)     Payment of the costs related to the Counties' acquisition of the Nunn Property;

(b)     Modification of the existing landfill gas collection system through new wells, piping systems and sumps;

(c)     Design and installation of new landfill gas flare system and related permitting costs;

(d)     Increased leachate collection;

(e)     Additional Phase II project work for site preparation and west phase Barrier Wall Work;

(f)     Environmental reporting obligations traditionally performed or paid by the Counties;

(g)     Performance of work improperly included by the Counties in LIF schedules;

102.    CFL provided such services with the expectation of payment by the Counties.

103.    The Counties benefitted from the services provided by CFL beyond CFL's obligations under the Contract.

104.    Permitting the Counties to retain the benefit of these services performed would be unjust.

105.    Accordingly, CFL is entitled to the reasonable value of the service(s) it performed for the Counties for which the Counties have not yet paid.

WHEREFORE, CFL respectfully requests judgment against the Defendants as follows:

1.    Determining the rights and obligations of the parties under the Contract as set forth in paragraph 88(a)-(g) above;

2.    Entering judgment in favor of CFL and against the Counties on its breach of contract claims and awarding CFL damages of at least $75,001 and equal to the costs that have been, and will be, incurred as a result of the Counties' breach, consequential damages arising from said breach, and pre-judgment and post-judgment interest on all such costs;

3.    Awarding CFL the reasonable value of the services it performed for the Counties' benefit and at the Counties' express or implied request outside CFL's contractual obligations; and

4.    Awarding such other and further relief to which it may be entitled.

Respectfully submitted,

**PLEWS SHADLEY RACHER & BRAUN LLP**


By:  s/ Brett E. Nelson
      One of the Attorneys for Plaintiff


Amy E. Romig, Atty. #22523-49
Brett E. Nelson, Atty. # 22096-53
Mary Ann Saggese, Atty. #15834-49
Fernando L. Diaz, Atty. #33991-49
Plews Shadley Racher & Braun LLP
1346 N. Delaware St.
Indianapolis, IN   46202-2415
Tel:  (317) 637-0700
Fax:  (317) 637-0710